# Timmes' Appeal.

*Wills—Issue devisavit vel non—Testamentary capacity—Evidence.*

1. Under section 41 of the Act of March 15, 1832, P. L. 135, an issue devisavit vel non, is of right where there is a substantial dispute upon a material question of fact, and the test is whether, under all the testimony, a verdict against the will should be allowed to stand.

2. An issue devisavit vel non should be granted on the ground of lack of testamentary capacity where it appears that the testator was an old man greatly enfeebled in mind and body and the circumstances under which the decedent's signature was obtained to an alleged ratification of the will indicate an indirection that calls for the closest scrutiny and requires clear proof that the decedent adopted the writing as his own at a time when he was in possession of his faculties and knew what property he owned and what disposition he desired to make of it.

Argued May 8, 1912. Appeal, No. 42, Jan. T., 1912, by George A. Shipe and Claud Shipe, caveators, from decree of O. C. Northumberland Co., Feb. T., 1910, No. 14½, refusing issue devisavit vel non in Estate of Nicholas Timmes, deceased. Before FELL, C. J. MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Caveat against probate of will. Petition for issue. Before SAVIDGE, P. J.

The opinion of the Supreme Court states the case.

*Errors assigned* were in dismissing exceptions to adjudication.

*W. H. M. Oram,* for appellant.

*J. A. Welsh,* with him *John I. Welsh* and *C. K. Morganroth,* for appellee.

OPINION BY MR. CHIEF JUSTICE FELL, July 2, 1912:

At the time the decedent signed the writing offered for probate as his will, he was on old man, greatly enfeebled in body and mind and lying in a hospital where he had been taken for treatment. According to the testimony of the hospital physicians, he had cerebral hemorrhages and hardening of the veins and was suffering with dementia that accompanied paralysis. He was dull, apathetic, hard to arouse, oblivious of his surroundings and incapable of any intelligent act. He had an estate of about $70,000 and no relatives living in this country of whom he knew. For a number of years he had lived in the family of the petitioners for an issue devisavit vel non and later in the family of the proponents of the will. None of these persons was related to him nor had any of them a claim on his bounty. As his life was fading away, and he was in a state of mind to assent to whatever was asked, there was a race between them to procure the last will.

In 1897, the decedent made a will giving all of his estate to Claude Shipe, one of the petitioners, and named the other petitioner as executor. This will continued unrevoked until December 6, 1909, when a second will was made dividing the estate between Claude Shipe and Annie Williams, in whose house the decedent was then living. On December 29, 1909, the decedent was taken from his home in Shamokin to a hospital in Philadelphia, and while there, on January 5, 1910, he signed the third will, in which Claude Shipe was named as the sole beneficiary. Having learned by inquiry of the making of this will, Annie Williams, went from Shamokin to Philadelphia, and on the next day, January 6, procured the signing of a fourth will, the one offered for probate, by which the whole estate is left to her and her children. On January 12, the decedent was removed from the hospital to her home in Shamokin, and he never afterwards left his bed. On January 29, he signed what is called a ratification of the fourth

will, that of January 6, confirming the gifts made thereby. He died February 4.

The testimony in relation to the condition of the decedent, while at the hospital, from December 29, 1909, till January 12, 1910, was of such a character as to justify the judge of the Orphans' Court that standing alone, it required the granting of an issue, but an issue was refused because of the so-called ratification of the will on January 29. The writing of January 6th, was not, according to the testimony, a will made by the decedent, but a will made by others, when he did not know where he was or what he was doing. The circumstances under which the decedent's signature was obtained on January 6, and the fact that an adoption of the writing was deemed essential, indicate indirection that calls for the closest scrutiny and requires clear proof that the decedent adopted the writing as his own at a time when he was in possession of his faculties and knew what property he owned and what disposition he desired to make of it. Such proof was not furnished and the issue should have been allowed. Under section 41 of the Act of March 15, 1832, P. L. 135, an issue devisavit vel non is of right where there is a substantial dispute upon a material question of fact, and the test is whether, under all the testimony, a verdict against the will should be allowed to stand. Graham's Est., 225 Pa. 314.

The order of the court is reversed and the record is remitted with direction that an issue be granted in accordance with the prayer of the petition.